UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARCUS F., | : |
| *Plaintiff*, | : |
| v. | :    No. 3:24-cv-1449 (SDV) |
| MARTIN O'MALLEY, | : |
| *Defendant*. | : |

### RULING ON PLAINTIFF'S MOTION TO REVERSE DECISION OF COMMISSIONER AND DEFENDANT'S MOTION TO AFFIRM

Plaintiff brings this administrative appeal from the decision of the Commissioner of the Social Security Administration denying his application for supplemental security income. For the reasons below, plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 17, is DENIED, and the Commissioner's Motion to Affirm, ECF 21, is GRANTED.

### A. LEGAL STANDARDS

#### 1. Disability and eligibility

A claimant is disabled under the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act provides for supplemental security income benefits to claimants who are indigent and disabled, without reference to prior work. *See* 42 U.S.C. § 1381 *et seq.*

#### 2. Commissioner's five-step review

The Commissioner of Social Security is authorized to make findings of fact and decide disability applications, *see* 42 U.S.C. § 1383(c)(1)(A), in accordance with the five-step

sequential evaluation process provided in 20 C.F.R. § 416.920.  (1) First, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity.  (2) If not, the Commissioner determines whether the claimant has a medically determinable impairment or combination of impairments that are "severe," meaning that it "significantly limits" the claimant's physical or mental ability to do basic work activities.  (3) If the claimant has a severe impairment or combination of impairments, the Commissioner evaluates whether, based solely on the medical evidence, the claimant has an impairment that "meets or equals" an impairment listed in Appendix 1, Subpart P, No. 4 of the regulations (the "Listings") and that either is expected to result in death or has lasted or will last for at least 12 months. [1]  If so, the claimant is disabled.  (4) If not, the Commissioner determines whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his or her past work. [2]  (5) If not, the Commissioner determines whether there is other work in the national economy which the claimant can perform considering his or her RFC, age, education, and work experience.  *See* 20 C.F.R. § 416.920.  The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden of proof on the final step.  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

      The Commissioner's authority to make these findings and decisions is delegated to an administrative law judge ("ALJ").  *See* 20 C.F.R. § 416.1429.  A claimant may request review of an ALJ's decision by the Appeals Council.  *See* 20 C.F.R. § 416.1467.  If the Appeals Council

---

[1] *See* 20 C.F.R. § 416.909 (durational requirement).

[2] Residual functional capacity is the most a claimant can do in a work setting despite his or her limitations.  20 C.F.R. § 416.945.

declines review or affirms the ALJ's decision, the claimant may appeal to the United States District Court. 42 U.S.C. §§ 405(g), 1383(c)(3).

3. **Court's review on appeal**

A district court reviewing the Commissioner's final decision is performing an appellate function, *see Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981), and has the power to affirm, modify, or reverse the Commissioner's decision based on its review of the briefs and the administrative record. *See* 42 U.S.C. § 405(g). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

B. **BACKGROUND**

1. **Procedural History**

In September 2021, plaintiff filed an application for supplemental security income (SSI) alleging a disability onset date of March 1, 2021. R. 177. The claim was denied at the initial and reconsideration levels, and plaintiff requested a hearing. R. 68-74, 76-83. In June 2023, ALJ Alexander Borre conducted a hearing at which at which the plaintiff and a vocational expert testified. R. 36-66. On September 11, 2023, the ALJ issued a written decision denying plaintiff's claim. R. 21-31. On July 10, 2024, the Appeals Council declined review. R. 2-3. Plaintiff filed this action in September 2024.

2. **Personal history**

Plaintiff was 38 years old on the alleged disability onset date. R. 275. He completed 10th grade but did not graduate high school and does not have a GED. R. 43. He has a history of childhood trauma and received some special education services. R. 419. Plaintiff has two

minor children, is divorced, and, due to domestic strife, was living in a safe house/shelter at the time of the hearing. R. 42-43, 56, 511, 654.  His work history includes multiple unskilled jobs, generally sporadic except for a more consistent period between 2013 and 2019.  R. 161-63.

### 3. List of impairments

In his September 2023 Decision, the ALJ found that plaintiff had the following severe impairments: posttraumatic stress disorder ("PTSD"), major depressive disorder, and attention deficit hyperactivity disorder ("ADHD").  R. 24.  However, the ALJ found plaintiff's right-hand fracture non-severe.  *Id.*

### 4. Overview of mental conditions

#### a. Mental health treatment

Plaintiff has received both counseling and medication treatment for mental health conditions, including PTSD related to violent situations in childhood and depressive disorder.  R. 407.  Other mental struggles included anxiety, potential ADHD, marital conflict, and issues controlling anger.  *Id.*  Plaintiff commenced an initial round of counseling and medication management in February and March 2018.  R. 401-415.  On February 28, 2018, he was prescribed bupropion for depression and prazosin for PTSD.  R. 407.  He had three subsequent mental health visits in 2018, after which the next mental health treatment record is from February 2021.  R. 316, 382-89.  It appears that he discontinued his medications during this gap.

After recommencing treatment in February 2021, plaintiff frequently attended counseling from March to July 2021.  R. 352-78, 432-98.  On April 6, 2021, he was prescribed Fluoxetine for depression.  R. 355.  Mirtazapine was added in June 2021.  R. 458.  During this period, he also discussed potential ADHD medications with his treaters, but he was advised in September 2021 to get his anxiety and depression under control first.  R. 427.  After a brief gap in treatment

in August and early September 2021, plaintiff frequently attended counseling and medication management from late September 2021 to September 2022. R. 314, 425-30, 501-578, 600-637.

There are no subsequent mental health treatment notes in the record. The ALJ made multiple records requests in April and May 2023 to Day Street Community Center and Community Health Centers with no response. R. 730-54.

### b. Dr. Hillbrand consultative examination

Plaintiff also attended a mental status examination with psychologist Marc Hillbrand, Ph.D., on January 4, 2022. R. 284. Plaintiff reported struggling with daily dysphoric thought content, with a depression level of 7 out of 10. *Id.* He had experienced suicidal thoughts in the past but wanted to "be around for my kids." *Id.* He expressed thoughts of worthlessness, and Dr. Hillbrand noted that he struggled with "considerable anxiety." *Id.* He also reported nightmares for many years, as well as intrusive memories of past trauma and mild auditory hallucinations, and said he is easily startled. R. 285-86.

Plaintiff reported that he could perform hygiene tasks with independence but would neglect them if he was depressed. R. 286. He also did household chores, managed his finances, assumed childcare responsibilities, attended appointments, and drove himself. *Id.*

Dr. Hillbrand assessed PTSD and major depressive disorder, recurrent moderate-to-severe, and considered the existence of ADHD and borderline intellectual functioning. R. 286. He observed that plaintiff exhibited borderline intellectual functioning across cognitive domains, had a "considerably below average" fund of knowledge, and had difficulty exerting sustained mental effort. R. 285. On COGNISTAT testing, plaintiff exhibited severe impairment in repetition, memory, similarities, and judgment; moderate impairment in attention and calculations; and mild impairment in naming. *Id.* Dr. Hillbrand noted that the claimant

5

presented as friendly with good social skills, alert and oriented in all spheres, and exhibited good hygiene and a concrete thought process. R. 285-86. Dr. Hillbrand stated: "There is no clear evidence of a cyclical mood disorder, psychotic disorder or severe cognitive disorder." R. 286.

Dr. Hillbrand opined that plaintiff had <u>mild</u> impairments in making judgments on simple work-related decisions; understanding, remembering, and carrying out complex instructions; and making judgments on complex work-related decisions. R. 286-87. He also opined that plaintiff had <u>mild to moderate</u> impairments in his ability to interact appropriately with the public, supervisors, and coworkers, and <u>moderate</u> impairments in his ability to maintain attention, concentration and pace. *Id.* Dr. Hillbrand's report notes that he reviewed plaintiff's disability application but not any treatment records. R. 284. Apparently unaware that plaintiff was frequently attending mental health counseling and medication management at that time, he opined that plaintiff's prognosis was guarded "in light of the absence of mental health treatment." R. 286.

### 5. Overview of hand injury

On August 18, 2022, plaintiff went to Norwalk ED after a physical assault three days earlier. R. 647. An x-ray of his ribs and lungs was unremarkable. R. 666-67. On September 6, 2022, a right-hand x-ray showed "mild deformity of the shaft of the fifth metacarpal likely reflecting old trauma." R. 645. On December 2, 2022, plaintiff returned to the ED for hand swelling and severe hand pain of ring finger and pinky of his right hand after punching someone with a closed fist. R. 696. An x-ray revealed acute fracture deformity. R. 700. After open reduction and internal fixation surgery of plaintiff's right ring finger on December 9, 2022, discharge notes stated that his pain was well controlled with medication. R. 702. The record includes a note dated January 11, 2023, from the surgeon excusing plaintiff from work for at

least one more week.  R. 661.  Additionally, the record includes the surgeon's order dated January 18, 2023, for post-operative physical and occupational therapy HSS Sports Rehab at Chelsea Piers and indicates that plaintiff's finger was stiff after the external fixator frame was removed one week prior.   R. 665.  The record also includes instructions dated January 23, 2023, for hand exercises to be completed at home, R. 663-64, which suggests that plaintiff attended at least one physical therapy appointment.

### C.  THE ALJ'S DECISION

After considering plaintiff's statements, the medical records, and medical opinions, the ALJ found that plaintiff had a mild limitation in understanding, remembering or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting or maintaining pace; and a moderate limitation in adapting or managing himself.  R. 25.  He went on to find that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> he can understand, remember, and carry out simple instructions.  He can occasionally interact with the public, co-workers, and supervisors.  He cannot collaborate.  He can adapt to occasional simple changes.

R. 26-29.  Based on testimony, from a vocational expert, the ALJ then found that the plaintiff was able to perform past relevant work as a store laborer and a packer.  R. 29-31.  He therefore concluded that plaintiff was not disabled under the Social Security regulations.

### D.  DISCUSSION

Plaintiff raises two claims of error.  *First*, he claims that the ALJ failed to adequately develop the medical record concerning his finger injury.  ECF 17-1 at 23.  *Second*, he claims that the ALJ's RFC determination should have included (a) a non-exertional limitation in

7

concentrating, persisting, or maintaining pace relating to his mental health, and (b) an exertional limitation relating to his fractured finger. *Id.* at 25-26.

### 1. Missing records

It is well established that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (cleaned up); 20 C.F.R. § 404.1512(b)(1) (agency must develop "complete medical history" from at least 12 months prior to application). The reverse is also true: the ALJ is not obligated to seek additional information "where there are no obvious gaps in the administrative record." *Rosa* at 79 n.5.

The ALJ's duty to develop the record is heightened where the claimant alleges a mental impairment, especially where such a claimant is proceeding *pro se*. *See Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (when claimant is unrepresented, ALJ has "heightened" duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts"); *see also Cassandra S. v. Kijakazi*, No. 22-cv-328 (MPS), 2023 WL 2867068, at *12 (D. Conn. Jan. 30, 2023) (Spector, M.J.) (heightened duty to develop record where mental impairment is at issue) (collecting decisions).[3]

Plaintiff alleges that the ALJ failed to obtain records that address his physical impairments and their effect on his ability to grasp, grip, and otherwise use his hands for fine and gross manipulation. ECF 17-1 at 23-24. He cites a gap in the medical record between the last

---

[3] Similarly, "when a claimant appears *pro se* [on appeal] and is otherwise impaired, [the court] must make a searching investigation of the record to make certain that the claimant's rights have been adequately protected." *Moran*, 569 F.3d at 113 (internal quotation marks omitted). However, after representing himself at the administrative level, plaintiff obtained counsel for this appeal, which mitigates this concern.

8

record and the hearing date – specifically, the latest medical note in the record is the hand surgeon's physical therapy order dated January 18, 2023, which was six months prior to the hearing on June 15, 2023. However, the record shows that the ALJ made reasonable efforts to fill this temporal gap as to some providers, and plaintiff has not identified any specific missing records as to the other alleged provider.

At the hearing, the ALJ stated that he would seek updated records from Day Street Community Center, Community Health Centers ("CHC"), and from the rehabilitation facility at Chelsea Piers (a/k/a HSS Sports Rehab at Chelsea Piers). R. 65. The record confirms that he sent multiple requests to Day Street and CHC just prior to the hearing but they did not supply any additional records, *see* R. 730-54, and the ALJ then sent a copy of the unfulfilled records requests to plaintiff and invited him to comment before they were entered into the record, R. 280-81, which he did not do, R. 21. The Second Circuit has explained that the ALJ's duty to develop the record requires "reasonable" efforts and held that the duty is satisfied if the agency requested records and "nothing in the record suggests that the ALJ should have known that [the provider]'s response was incomplete." *Drake v. Astrue*, 443 F. App'x 653, 656 (2d Cir. 2011). Applying this standard, the ALJ's efforts were adequate as to the Day Street and CHC providers.

As for Chelsea Piers, there are only three pages of treatment notes in the record: a one-page order for physical and occupational therapy for post-operative stiffness in plaintiff's right ring finger dated January 18, 2023, and two pages of instructions for home exercises dated January 23, 2023. R. 663-65. Although the ALJ did not send a post-hearing records request to Chelsea Piers – despite saying at the hearing that he would – plaintiff, through current counsel, has not identified any missing treatment that in fact occurred during that period, which is a fundamental defect in his claim. *See*, *e.g.*, *Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x

9

41, 44 (2d Cir. 2020) (rejecting duty to develop claim where plaintiff neither provided the allegedly critical missing records to the district court nor described their contents). And even assuming plaintiff attended a course of physical therapy at Chelsea Piers,[4] he has not established that the putative missing records likely have information that "could materially change the weight of the evidence" underlying the ALJ's conclusion. *Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018). The Second Circuit has concluded that remand is not warranted under such circumstances. *See id.* ("[T]he potentially missing records here would consist of routine check-up and progress notes, with no indication that they contain significant information. It is not even clear that any records are actually missing."); *see also*, *e.g.*, *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (duty to develop claim was "baseless" where plaintiff "identifie[d] no specific record that was missing, much less explain[ed] how it would have affected her case").

Accordingly, there was no error in the ALJ's development of the record.

**2. RFC determination**

Plaintiff's second claim of error is that the RFC determination should have included (a) a non-exertional limitation in concentrating, persisting, or maintaining pace relating to his mental health, and (b) an exertional limitation relating to his fractured finger. ECF 17-1 at 25-26. The Court reviews these claims under the substantial evidence standard, which provides that if the Commissioner's decision will be sustained if it is supported by substantial evidence, even where the administrative record could also adequately support contrary findings. *See Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

---

[4] The home exercise instructions, R. 663-65, imply that plaintiff attended at least one physical therapy session at Chelsea Piers.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). It must be "more than a mere scintilla or touch of proof here and there in the record." *Id.* In other words, the court can reject ALJ's factual findings "only if a reasonable factfinder would have to conclude otherwise." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022).

### a. Concentration, persistence, and pace

Plaintiff claims that the RFC determination should have included a limitation concerning his ability to remain on task. ECF 17-1 at 25. In support, he cites his statements to mental health providers that he had difficulty with attention and focus. *Id.* He also cites an opinion from one of the agency reviewers, psychologist Susan Uber, Ph.D., who concluded that plaintiff had a moderate limitation in the ability to maintain attention and concentration for extended periods and stated that he "could have occasional problems with prolonged concentration and sustained pace." *Id.* (citing R. 81).

Plaintiff argues that although the ALJ found Dr. Uber's opinion to be persuasive, his RFC determination does not account for her conclusion that plaintiff had a moderate limitation in attention and concentration. ECF 17-1 at 25. However, the RFC determination is not inconsistent with Dr. Uber's opinion. In summarizing the occupational impact of plaintiff's attention and concentration issues, Dr. Uber explicitly opined that plaintiff "can do simple work (RRTs [routine repetitive tasks]) for 2hr periods in an 8hr day with adequate attention, concentration and pace." R. 81. Similarly, the RFC determination accounted for this limitation by restricting him to "unskilled" work with "simple instructions" and only "occasional simple changes," R. 26, which is synonymous with routine repetitive tasks. To the extent that plaintiff is contending that the RFC determination should have addressed this issue more explicitly, the

11

Second Circuit has held that an RFC determination may sufficiently address attention and concentration issues without including explicit restrictions related to staying on task or attendance. *See Valdes-Ocasio v. Kijakazi*, No. 21-3152, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023).

As Dr. Uber's concern that plaintiff "could have <u>occasional</u> problems with prolonged concentration and sustained pace," plaintiff argues that this means he would be off task for up to one third of the workday, which would be work-preclusive. *See* ECF 17-1 at 2-26 (citing the definition of "occasionally" in SSR 83-10).[5] However, the record and case law do not support that interpretation. Dr. Uber used the word "occasional" five times in her opinion. In four of those instances – including the one cited by plaintiff – she appeared to be using the word colloquially, as compared to the one other instance where she explicitly clarified that she meant "< 1/3 of the time." *See* R. 81. Moreover, to categorically equate a moderate limitation in attention and concentration with "up to one-third of the day" would render that limitation work-preclusive in every case, which decisional law does not support. *Wayne C. v. Comm'r of Soc. Sec.*, No. 23-cv-1253 (FPG), 2025 WL 755429, at *3 (W.D.N.Y. Mar. 10, 2025) (citing *Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010)). "[I]t is well-established that [] moderate [mental] limitations do not prevent individuals from performing 'unskilled work,'" *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023), which is what the ALJ found plaintiff capable of performing here, with additional restrictions requiring "simple

---

[5] SSR 83-10 defines "occasionally" to mean "occurring from very little up to one-third of the time" in the context of sedentary work, i.e., with reference to exertional limitations. For purposes of analyzing plaintiff's argument, the Court assumes *arguendo* that the definition could apply to non-exertional limitations.

instructions" and only "occasional simple changes."  Consequently, plaintiff has not identified a reversible error in this regard.

### b. Finger impairment

Plaintiff also claims that after finding that his surgically repaired right ring finger fracture was non-severe, the ALJ failed to account for the potential occupational impacts of the injury. ECF 17-1 at 26.  To the extent that plaintiff is claiming that the ALJ skipped a necessary part of the analysis, the claim is baseless: the ALJ addressed the hand injury both in the Step 2 severity analysis and in the RFC analysis.  R. 24, 27.  In the latter discussion, the ALJ noted plaintiff's statements that he has difficulty gripping items with his right hand and experiences stiffness throughout his right hand; however, the ALJ also noted that plaintiff takes over the counter medication for his pain and has no difficulty using a smart phone.  R. 27.  While plaintiff testified that he sometimes has to use two hands to use a smartphone, this is not unusual, and in any event, the ability to use a smartphone coupled with plaintiff's additional testimony that he plays video games and posts on social media support the ALJ's finding that there is "evidence of intact fine motor skills" in the Step 2 analysis and for purposes of the RFC determination.  R. 24. In short, the ALJ duly considered the injury.

To the extent that plaintiff is claiming that the ALJ lacked substantial evidence to conclude that plaintiff had no exertional limitation resulting from the hand injury, he cites no evidence to support a contrary position.  Moreover, in addition to the hand-related evidence cited in the ALJ's decision, additional evidence supports the ALJ's conclusion, including plaintiff's testimony that he continued to post on social media, play video games, shop for groceries, cook for himself, carry a gallon of milk for a short period of time, clean up after himself, take out trash, sweep, mop, and wipe counters and tables.  R. 56-57.  Although plaintiff also testified that

he cannot make a fist and could not keep a phone service job because he could not hold tablets or phones, or write, the Court must sustain the ALJ's factual findings if they are supported by substantial evidence, even if other evidence might support contrary findings. *See Schauer*, 675 F.2d at 57. Because there was substantial evidence to support the ALJ's finding of no exertional impairment, remand is not warranted.

## E.  CONCLUSION

For the foregoing reasons, plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 17, is DENIED, and the Commissioner's Motion to Affirm, ECF 21, is GRANTED.

This is not a recommended ruling. The consent of the parties allows a magistrate judge to direct the entry of a judgment of the District Court in accordance with the Federal Rules of Civil Procedure. Appeals from this judgment can be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

SO ORDERED, this 28th day of August, 2025, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge